IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

NATIVIDAD DIAS,                          )
                                         )
    Petitioner,      )
                                         )
  v.                            )  CV 620-035
                                         )   (Formerly CR 618-014)
UNITED STATES OF AMERICA,                )
                                         )
    Respondent.      )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at the Federal Correctional Complex in Coleman, Florida, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

### A. Indictment

On September 10, 2019, the grand jury in the Southern District of Georgia charged Petitioner, along with nineteen co-defendants, with one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 ("Count One") and three counts of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1). United States v. Dias, CR 618-014, doc. no. 3 (S.D. Ga. September 10, 2019) (hereinafter "CR 618-014"). The Court appointed attorney Laura G. Hastay under the Criminal Justice Act to represent Petitioner. Id., doc. nos. 18-19.

### B.      Agreement to Plead Guilty

On December 21, 2018 Petitioner appeared with counsel and pled guilty to Count One. Id., doc. nos. 324, 351, 352, 526.  The Plea Agreement stated that Petitioner would be subject to a mandatory minimum ten years of imprisonment.  Id., doc. no. 526, ("Plea Agreement"), p. 3.  The Plea Agreement memorialized the parties' agreement to a sentence of 240 months, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  Id.  Notably, the Plea Agreement further explained Sentencing Guidelines are advisory and "are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular Count to which Defendant is pleading guilty."  Id. at 3-4.  The Plea Agreement also stated, "[t]he government is free to provide full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range."  Id. at 4.

In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment, and (2) not object to a two-point acceptance of responsibility reduction and move for an additional one-point reduction if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id.  Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

> The elements necessary to prove the offense charged in Count One are (1) [t]hat two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess 50 grams or more of methamphetamine, a Schedule II controlled substance; and (2) [t]hat the Defendant knew the unlawful purpose of the plan and willfully joined in it; and (3) [t]hat the object of the unlawful plan was to possess with the intent to distribute and distribute the methamphetamine.
>
> Defendant agrees that he is, in fact, guilty of these offenses. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: specifically, that beginning on a date at least as early as November 2015, up to and including the return date of this indictment, the precise dates being unknown, in Bulloch, Burke, Candler, Effingham, Evans, Jenkins, and Screven Counties, within the Southern District of Georgia, and elsewhere, **NATIVIDAD DIAS**, aided and abetted by the co-defendants and by others

known and unknown, with some joining the conspiracy earlier and others joining later, did knowingly and intentionally combine, conspire, confederate and agree together and with each other, and with others known and unknown, to possess with intent to distribute and to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 846. And further that as a result of his own conduct, respectively, and the conduct of conspirators, it was reasonably foreseeable to these defendants that this conspiracy involved 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

Id. at 2. With his signature on the Plea Agreement, Petitioner agreed he read and carefully reviewed it with his counsel, Ms. Hastay, and Petitioner agreed he understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 10.

By signing the Plea Agreement, Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 6-7. By signing the Plea Agreement, Petitioner additionally attested Ms. Hastay had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly

understood where he was and why he was in court.  Id., doc. no. 597 ("Rule 11 Tr."), pp. 3-6. Judge Hall reviewed all the charges against Petitioner in the indictment.  Id. at 6.  Petitioner confirmed he had as much time as he needed to go over the charges with Ms. Hastay.  Id. at 7. Petitioner also testified under oath he was satisfied with the assistance he had received from Ms. Hastay and that he had read and reviewed the Plea Agreement with counsel before signing it.  Id. at 8.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Id. at 7-8.  Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall then confirmed the parties' agreement, pursuant to Rule 11(c)(1)(C), that Petitioner's sentence was not to exceed 240 months.  Id. at 9.  Judge Hall then explained that if the Court accepted the Plea Agreement, Petitioner could not be sentenced beyond 240 months, and if the Court did not accept the Plea Agreement, Petitioner could withdraw his plea or, if he still wished to plead guilty, possibly be subject to a less favorable sentence.  Id. at 9-10.

Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  Id. at 9-10.  Judge Hall confirmed that, other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 10.  Judge Hall reviewed the statutory penalty for pleading guilty to Count One, which was a statutory minimum sentence up to ten years in prison and a maximum of life.  Id.  When asked, Petitioner confirmed he understood the possible imprisonment penalty, as well as the potential $10,000,000 fine, up to five years of supervised release after completion of the term of

imprisonment, and the special assessment fee of $100.  Id. at 10-11.  Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition.  Id. at 11.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI.  Id. at 11-13.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id.  However, Judge Hall reiterated if he accepted the parties' Rule 11(c)(1)(C) Plea Agreement, Petitioner's term of imprisonment could not exceed 240 months.  Id. at 13.  Judge Hall further explained that, if he decided to reject the Rule 11(c)(1)(C) agreement of 240 months imprisonment at sentencing, Petitioner could withdraw his guilty plea or stand by his guilty plea and undergo sentencing without the assurance of the Rule 11(c)(1)(C) agreement.  Id. at 10.  Petitioner stated he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence.  Id.

After reviewing the elements of conspiracy the government would have to prove if Petitioner went to trial, and confirming Petitioner was admitting his part in the charged conspiracy, Judge Hall next heard a factual basis for the guilty plea from Agent Kevin Waters with the United States Drug Enforcement Agency.  Id. at 14-21.  Agent Waters testified he, along with other federal and state officers, investigated the drug trafficking activities of Petitioner and his co-conspirators, beginning in November 2015 and mainly consisting of the trade of crystal methamphetamine in Bullock County and other surrounding counties within the Southern District of Georgia.  Id. at 15.  The investigation revealed Petitioner and his co-

conspirators agreed and planned to possess illegal substances with the intent to distribute.  Id. Agent Waters used controlled purchases, surveillance, and informants to gather information. Id. at 16.

During the investigation, three controlled purchases occurred with Petitioner on May 31, June 8, and August 16, 2017, and involved 27.54, 31.869, and 81.230 grams of methamphetamine, respectively, purchased at Petitioner's residence and in Screven County, Georgia.  Id. at 15-17.  In each controlled purchase, Petitioner possessed the illegal substances and distributed them to the confidential informant.  Id. at 17.  On September 14, 2017, Petitioner gave a confidential informant 52.421 grams of crystal methamphetamine and 411.8 grams of marijuana in Screven County, which was later paid for on different dates with government funds.  Id. at 17-18.

During the investigation, Agent Waters discovered Petitioner's role in the conspiracy was that of a leader.  Id. at 18.  Co-conspirators and confidential informants described Petitioner's role in the conspiracy as a leader.  Id.  Agent Waters also determined from his investigation Petitioner was responsible for distributing multiple kilograms of illegal substances per month.  Id.

On cross-examination by Ms. Hastay, Agent Waters also testified some of Petitioner's co-conspirators were being supplied by sources other than Petitioner.  Id. at 19-20.  Further, officers never seized more than one kilogram of methamphetamines during the course of the investigation despite Agent Waters believing Petitioner was distributing multiple kilograms per month.  Id. at 20.  After Agent Waters finished testifying, Petitioner stated he had no disagreement with anything presented in the factual basis for the guilty plea, and he admitted his participation in the conspiracy.  Id. at 21.  Petitioner also told Judge Hall he was guilty of,

and wanted to plead guilty to, Count One of the indictment.  Id.

Judge Hall then summarized the proceedings as follows:

> With the entry of the signed plea into the record of this hearing, this Court finds that the [Petitioner], Mr. Dias, is competent.  He fully understands the charge against him.  There is an independent factual basis supporting his guilty plea on this charge.  He knows the statutory punishment, including the statutory minimum, that could be imposed on this charge, and he knows his jury rights, which he has knowingly and voluntarily waived.

> I further find that [Petitioner's] decision to plead guilty today was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement.  Therefore, I now accept the guilty plea and adjudge Mr. Dias guilty of Count One of the indictment based upon that plea.

Id. at 23.

### C.    Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") setting Petitioner's Total Offense Level at thirty-nine, Criminal History Category at I, and Guidelines imprisonment range at 262 to 327 months.  PSI ¶¶ 31, 36, 57.  Petitioner's base level offense was thirty-eight, increased by four for his role in the conspiracy as a leader.  PSI ¶¶ 22, 25.  The offense level was then lowered three levels for Petitioner's acceptance of responsibility.  PSI ¶¶ 29-30.

Petitioner raised two objections to the PSI.  CR 618-014, doc. no. 598 ("Sent. Tr."), p. 4; PSI Add.  Petitioner first objected to the offense level enhancement for his role as a leader in the conspiracy, and second, he objected to the drug weight or quantity attributed to him. Sent Tr., p. 4-5; PSI Add.  Petitioner waived the second objection, citing the low chance of it succeeding, a desire to maintain eligibility for acceptance of responsibility, and general defense strategy.  PSI Add.  Petitioner also filed a motion for downward departure, arguing Petitioner's criminal history and personal characteristics warranted a sentence significantly

7

less than 240 months.  CR 620-014, doc. no. 478.

At sentencing, Agent Waters testified in support of the offense level enhancement for Petitioner's role as a leader in the conspiracy. Sent. Tr., p. 5-20.  Agent Waters summarized his investigation, which included the discovery Petitioner was in a leadership role of more than five people within the conspiracy.  Id. at 6-7.  Petitioner led his co-conspirators by giving directions and instructions on receiving, storing, and distributing drugs.  Id. at 7.  Petitioner recruited co-conspirators, including Megan Bazemore, Christina Davis, and Cullen Neal, to distribute and hold drugs for Petitioner, and he gave them instructions that included driving Petitioner to certain locations.  Id. at 8-9.  Petitioner was seen with large sums of money by the above-named individuals and confidential informants, which in Agent Water's experience was indicative of a leadership role.  Id. at 10.  Agent Waters also testified Petitioner would participate in consignment transactions, wherein Petitioner provided customers with drugs and received payment at a later date, which also indicated his authority as a leader.  Id. at 11.  On cross examination, Agent Waters testified Petitioner's debt book and large amounts of cash were never seized by officers.  Id. at 13.  Agent Waters also testified other leaders within the conspiracy also supplied co-conspirators with controlled substances.  Id. at 15-20.

Agent Waters was the only witness to testify.  Id. at 20.  The government and defense counsel gave arguments concerning the offense level enhancement.  Id. at 21-24.  Judge Hall overruled Petitioner's objection and found Petitioner was in fact a leader of the conspiracy under U.S.S.G. § 3B1.1, thereby warranting the offense level enhancement.  Id. at 24-26. Having overruled the objection, Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein, and determined the advisory Guidelines range was 262 to 327 months imprisonment.  Id. at 27.

Prior to announcing the sentence, Judge Hall heard from Ms. Hastay in regard to the motion for downward departure.  Id. at 27-30.  Petitioner made a brief statement and apology. Id. at 30.  Judge Hall denied the motion for downward departure, accepted the parties' Rule 11(c)(1)(C) Plea Agreement, and imposed a term of imprisonment of 240 months.  Id. at 32-35; CR 116-045, doc. nos. 524-27.  In keeping with the terms of the Plea Agreement, and in accordance with the information on the Post-Conviction Consultation Certification, (CR 618-014, doc. no. 528), Petitioner did not file a direct appeal.

**D.    2255 Proceedings**

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)    Petitioner argues his guilty was not voluntary, knowing, or intelligently made because of the representation by the Court and his counsel that he would be deported to Mexico after one year of imprisonment.

(2)    Counsel provided ineffective assistance at the Rule 11 hearing by providing inadequate investigation and deficient legal research.

(3)    Counsel provided ineffective assistance at sentencing by not informing the Court it should comply with U.S.S.G. § 1B1.3, resulting in a due process error as well.

(4)    Counsel provided ineffective assistance by giving "deficient representation" by not filing a direct appeal and not explaining the procedural default doctrine.

(See generally doc. no. 1.)

**II.    DISCUSSION**

**A.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500,

505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Id. at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance

from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989). Furthermore, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the

11

defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

### B.     Petitioner Has Not Established He Is Entitled to Relief on Ground One

Petitioner asserts in Ground One his guilty plea was not voluntary, knowing, or intelligent because Ms. Hastay, along with the Court, represented to Petitioner he would serve no more than one year in prison and then be deported to Mexico. (Doc. no. 1, p. 14.) As discussed below, the record establishes Petitioner's guilty plea was knowingly and voluntarily entered.

### 1.     Petitioner's Guilty Plea Was Voluntary and Knowing

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563,

569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

At the Rule 11 hearing, Judge Hall reviewed the conspiracy charge and other charges against Petitioner, specifically informing him in clear terms of the charge to which he was pleading guilty, and reviewed the elements of the offense the government would have to prove to obtain a conviction.  Rule 11 Tr., pp. 6, 13-14.  Petitioner testified he understood this information.  Id. at 6, 8-10, 14.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 7-8.  Petitioner testified that, other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement.  Id. at 3, 10, 13. Thus, Judge Hall addressed the three core principles before accepting Petitioner's guilty plea.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction.  In particular, Judge Hall explained that if he accepted this Plea Agreement, Petitioner would be sentenced to the Rule 11(c)(1)(C) agreed term of twenty years in prison. Id. at 8-13.  Finally, Petitioner also testified he had enough time to discuss the charges with Ms. Hastay and was satisfied with her services.  Id. at 7-8; see also Plea Agreement, p. 8 ("Defendant believes [] his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 10 ("I have read and carefully reviewed this agreement with my attorney.").

Petitioner argues he only agreed to plead guilty because the Court and Ms. Hastay represented to Petitioner at the Rule 11 hearing he would receive no more than one year in prison and then be deported to Mexico, where Petitioner wished to return.  (Doc. no. 1, p. 14.)

Such a representation was never made at the Rule 11 hearing.  In fact, Judge Hall pointed to the twenty-year term of imprisonment agreed by the parties under Rule 11(c)(1)(C), and explained that if he rejected this agreement at sentencing, which he did not, Petitioner could withdraw his guilty plea or face sentencing under the default framework, which gave Judge Hall the discretion of sentencing Petitioner to any sentence that did not exceed the statutory maximum penalty.  Rule 11 Tr., pp. 8-11.

In addition, Petitioner confirmed under oath no one promised him a specific sentence beyond what was in the Plea Agreement, thereby ruling out any possibility of Ms. Hastay privately assuring Petitioner he would only serve one year of imprisonment.  Id. at 13.  Furthermore, in the unlikely event Ms. Hastay ever uttered such an assurance to Petitioner before his change of plea hearing, Judge Hall remedied any such error by giving a full explanation of the sentencing process at the change of plea hearing.  Further, there was no mention of deportation at the Rule 11 hearing.  Deportation was a point of discussion at sentencing and in Petitioner's motion for downward departure, but never in a context suggesting Petitioner would serve anything less than the full sentence of imprisonment.  Sent. Tr., pp. 28-29, 34.

Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.  Indeed, in his request for relief in the § 2255 motion, Petitioner does not ask to withdraw his guilty plea, but rather

only asks to be re-sentenced.   (Doc. no. 1, p. 13.)   Accordingly, the Court concludes Petitioner's plea was knowing and voluntary.

### C.   Counsel Was Not Ineffective by Conducting an Inadequate Investigation or Deficient Legal Research

In Ground Two, Petitioner claims Ms. Hastay failed to provide effective assistance during plea bargaining through inadequate investigation and deficient legal research.  (Doc. no. 1, p. 15.)  Petitioner further argues he is innocent, set up by his co-defendants, and a more thorough investigation by Ms. Hastay would have led to a more favorable plea deal.  (Id.)  Petitioner's Ground Two claim clearly fails.  Petitioner cannot validly claim he was innocent of the conduct to which he pled guilty, as such assertions are contradicted by Petitioner's sworn testimony at the change of plea hearing.   "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

At the change of plea hearing, Petitioner testified he committed the crimes to which he was pleading guilty, agreed with the testimony by Agent Waters regarding his involvement in the criminal activity, and stated he wanted to plead guilty because he was in fact guilty of committing the crimes.  Rule 11 Tr., pp. 14, 21.  Furthermore, Petitioner confirmed in the PSI "I am guilty of the offense."  PSI ¶ 19.  Moreover, Petitioner signed the plea agreement setting forth the factual basis for his guilt and swore under penalty of perjury the facts recounted therein were true.  Plea Agreement, pp. 1-2, 10.

16

Further, Petitioner does not specify what facts or arguments Ms. Hastay should have discovered from additional investigation and legal research. Petitioner argues he told Ms. Hastay he was innocent and set up to be a scapegoat in the conspiracy. However, as discussed above, Petitioner agreed he was guilty of the conspiracy charge, and as stated in § I.B-C., supra, there was an extensive factual background to support his guilty. Additionally, Ms. Hastay developed Petitioner's defense by challenging Agent Waters's factual assertions on cross examination at the Rule 11 and sentencing hearing and articulating mitigating factors during the sentencing phase. Rule 11 Tr., pp. 18-21; Sent. Tr., pp. 13-20, 23-24.

When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam). Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508. Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Chandler, 218 F.3d at 1317. Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). This is particularly true where, as here, Petitioner has not identified any specific research Ms. Hastay should have performed, let alone shown that additional research would have changed the outcome of the proceedings, or shown prejudice, given his solemn declaration of guilt and the extensive facts against his innocence.

17

Thus, Petitioner's belated claim he was innocent of the crimes to which he pleaded guilty, and his claim Ms. Hastay was ineffective for advising Petitioner to plead guilty despite his innocence, are insufficient to carry the burden of establishing his admissions at the change of plea hearing were false.  <u>Rogers</u>, 848 F.2d at 168.  Petitioner's assertions fail to show Ms. Hastay's representation fell below an objective standard of reasonableness or that Petitioner was in any way prejudiced.

### D. Counsel Was Not Ineffective for Failing to Inform the Court it Must Comply with U.S.S.G. § 1B1.3 and Petitioner's Due Process Argument is Procedurally Defaulted

In Ground Three, Petitioner first argues Ms. Hastay provided ineffective assistance of counsel by failing to inform the Court it must comply with U.S.S.G. § 1B1.3.  (Doc. no. 1, p. 16.)  Petitioner argues he never agreed to his role in the conspiracy or the drug weight attributed to him, and Ms. Hastay failed to object to a "truncated sentencing procedure or ensure the government met its burden of proof."  (<u>Id.</u>)  Section 1B1.3 lists conduct relevant to determining the sentencing guideline range.  Specific to conspiracies, relevant conduct includes:

[A]ll acts and omissions of others that were-

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B). There are at least four reasons why Petitioner's claim of ineffective assistance with respect to this provision has no merit.

18

First, there is no suggestion in the record Judge Hall or the parties performed any act in connection with sentencing that runs afoul of § 1B1.3(a)(1)(B).  Indeed, Plea Agreement cited § 1B1.3 and appropriately explained the sentencing guidelines consider all relevant conduct and not just facts specific to Count One.  Plea Agreement, pp. 3-4.  Further, the Plea Agreement also sets forth facts showing Petitioner conspired with others to distribute illegal substances and "it was reasonably foreseeable to these defendants that this conspiracy involved [fifty] grams or more of methamphetamine."  Id. at 2.

Second, the PSI calculated Petitioner's offense level using all relevant conduct under § 1B1.3.  PSI ¶¶ 6-16.  These facts, which are mainly derived from co-conspirators and confidential informants, attributed a total of 8.874 kilograms of methamphetamine to Petitioner because they included acts by Petitioner and co-conspirators that were within the scope of the conspiracy, in furtherance of the conspiracy, and reasonably foreseeable in connection to the conspiracy.  PSI ¶¶ 6-16.  Petitioner initially objected to the drug weight attributed to Petitioner in the PSI but waived that objection because it was unlikely to succeed and could be detrimental to his request for reduction based on acceptance of responsibility.  Ms. Hastay confirmed waiver of the objection at the sentencing hearing.  Sent. Tr., p. 4.  Although Petitioner may now disagree with the decision to waive the objection to drug weight attributed to him in the PSI, Ms. Hastay's waiver of the objection because of these reasons did not cause her representation to fall below the objective standard of reasonableness.  See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (holding defense counsel's "strategic choices are virtually unchallengeable").

Third, the withdrawn objection would not have succeeded because the Court appropriately considered the acts of Petitioner's co-conspirators, and the total amount of

controlled substances sold by the conspiracy, as relevant conduct under § 1B1.  As stated in § I.C., supra, Agent Waters testified to Petitioner's extensive criminal conduct in the conspiracy as well as the related activities of his co-conspirators.  Sent. Tr., pp. 5-20.  Judge Hall cited these facts in support of the decision to overrule Petitioner's objection to the offense level enhancement for being a leader in the conspiracy.  Id. at 24-27.  Although Petitioner argues Ms. Hastay failed to object or hold the government to its burden, Ms. Hasty clearly challenged Agent Waters's assertions in a thorough cross examination, highlighting the fact co-conspirators were self-interested parties and some received illegal drugs outside the control or influence of Petitioner.  Sent. Tr., pp. 13-20.  Therefore, Agent Waters' testimony was properly considered and the relevant conduct of co-conspirators was attributed to Petitioner under § 1B1.

Fourth, any error by counsel during the process of the Court determining the appropriate guidelines range could not have prejudiced Petitioner because the Court ultimately imposed the sentence to which Petitioner stipulated and agreed pursuant to Rule 11(c)(1)(C).

Petitioner also attempts to raise an independent due process argument in Ground III.  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge."  United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

For the Court to review a claim otherwise barred in collateral proceedings, Petitioner must show both cause and actual prejudice from the error of which he complains.  Brown, 720 F.3d at 1333; Montano, 398 F.3d at 1280.  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  McQuiggin v. Perkins, 569 U.S. 383, 395 (2013) (internal quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

Petitioner has not shown a sentencing error constituting a fundamental defect reviewable in these § 2255 proceedings, and his due process claim in Ground Three is defaulted.  See United States v. Addonizio, 442 U.S. 178, 186 (1979) ("There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that

renders the entire proceeding irregular and invalid.")  Nor has he made any showing of cause, prejudice, or actual innocence.

### E.   Counsel Was Not Ineffective in Advising Petitioner of His Appellate Rights, and Petitioner Decided to Forego an Appeal

In Ground Four, Petitioner argues Ms. Hastay provided ineffective assistance by failing to act on Petitioner's desire to file a direct appeal because he disapproved his sentence and by failing to apprise Petitioner of the procedural default doctrine. (Doc. no. 1, p. 17.)  The Court disagrees.

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule.  "[a]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal."  Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions).  Thus, if the Court determines Ms. Hastay failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.  Furthermore, even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so.  Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 478, 480).

On June 7, 2019, following sentencing, Petitioner signed a post-conviction consultation certification, confirming Ms. Hastay explained the appellate process, advised him about the advantages and disadvantages of pursuing an appeal, and thoroughly inquired into his interest

in appealing his conviction.  CR 618-014, doc. no. 528, p. 3.  Just above his signature on this document, Petitioner checked the space confirming his decision to forego an appeal despite the potential consequences, which expressly included "waiver of his/her rights to complaint about the process that led up to his/her conviction, including in the future, should he/she decide to seek any form of habeas corpus, 28 U.S.C. § 2255, or other judicial relief from the conviction."  Id.  In light of Petitioner's signed post-conviction consultation certification form, the Court finds wholly incredible Petitioner's allegations he instructed Ms. Hastay to file an appeal and Ms. Hastay failed to do so.  Accordingly, the Court finds Petitioner did not ask Ms. Hastay to file an appeal, Ms. Hastay fulfilled her duty to consult with Petitioner about filing an appeal, and Petitioner is not entitled to relief on Ground Four.

## II.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of July, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA